USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 7/1/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LUIS ALVAREZ, ANGEL CAMAS, DIEGO  :
CAMAS, LUIS CORASAICA, DIEGO
GUAMAN, ANGEL QUILLE, WILSON      :
QUITO AND JOSE SANCHEZ,

                   :

             Plaintiffs,

                   :

      -against-

                   :

WELL-S INDUSTRIAL, INC., AND
BONG JUN PARK a/k/a BONGJUN        :
PARK,

                   :

           Defendants.
----------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

**REPORT AND RECOMMENDATION**

12-CV-8835 (VSB)(KNF)

TO THE HONORABLE VERNON S. BRODERICK, UNITED STATES DISTRICT JUDGE

*Procedural History*

The plaintiffs, construction workers, commenced this action against Well-S Industrial,

Inc. ("WI"), Peter Cha a/k/a Kwang Jae Cha, Kyong Hong a/k/a Kyong Ae Kim and Bong Jun

Park a/k/a Bongjun Park ("Park"), alleging violations of the Fair Labor Standards Act ("FLSA"),

29 U.S.C. §§ 201-219 and New York Labor Law ("NYLL"), as well as causes of action for

quantum meruit and unjust enrichment, in connection with work they performed at three sites in

New York, in 2010 and 2011, namely, the Dwight School (the "School site"), the Korean

Methodist Church of Staten Island (the "Church site") and a building on Long Island (the "Long

Island site"). In their amended complaint, the plaintiffs asserted the following claims: (1)

"Unpaid Wages in Violation of NYLL"; (2) "Unpaid Overtime in Violation of NYLL"; (3)

"Unpaid Overtime in Violation of the FLSA"; (4) "Unpaid Minimum Wages in Violation of NYLL"; (5) "Unpaid Minimum Wages in Violation of the FLSA"; (6) "Unpaid Spread of Hours in Violation of NYLL"; (7) "Unlawful Retaliation Against Plaintiff [Jose] Sanchez ["Sanchez"] in Violation of NYLL"; (8) "Failure to Provide Notice of Pay Rate and Hours in Violation of NYLL"; (9) "Failure to Provide Detailed Wage Statement in Violation of NYLL"; (10) "Defendants Failed to Compensate Plaintiffs for the Value of Their Services Rendered"; and (11) "Defendants Were Unjustly Enriched to the Detriment of Plaintiffs." In the amended complaint, the plaintiffs sought declaratory and injunctive relief, as well as unpaid wages, overtime compensation, spread-of-hours compensation, liquidated damages, damages for failure to post notices and provide wage statements, attorneys' fees, costs, pre-judgment interest and post-judgment interest. Sanchez sought liquidated, compensatory and punitive damages in connection with his claim of retaliation, which occurred "in or around March 2012."

On March 1, 2013, the Clerk of Court issued a certificate noting the default of WI and Park. On April 29, 2013, the assigned district judge determined that the plaintiffs are entitled to a default judgment against WI and Park, and referred the matter to the undersigned for an inquest on damages. Subsequently, the plaintiffs entered into a stipulation with Peter Cha a/k/a Kwang Jae Cha and Kyong Hong a/k/a Kyong Ae Kim, dismissing the claims against them and Peter Cha a/k/a Kwang Jae Cha's crossclaims. On August 29, 2014, plaintiff Diego Guaman dismissed his claims against the defendants. Before the Court are: (i) "Plaintiffs' Memorandum of Law in Support of the Inquest Determination"; (ii) the plaintiffs' declarations; (iii) a declaration by the plaintiffs' attorney, Amy Tai ("Tai") with exhibits; (iv) a declaration by the plaintiffs' attorney Thomas Fritzsche ("Fritzsche") with exhibits; and (v) Tai's supplemental declaration with exhibits.

2

*Plaintiffs' Inquest Submissions*

The plaintiffs seek to recover $110,275.13, consisting of: (a) $48,846.12, in damages, including liquidated damages and pre-judgment interest; and (b) $61,429.01, in attorneys' fees and costs. The plaintiffs contend that the defendants hired them to perform excavation work and concrete work at the School site and construction work at the Church site and the Long Island site. They maintain that they are entitled to damages on their wage claims based on the plaintiffs' recollections and estimates of their received pay, hours worked, days on which they were not paid any wages or the required overtime compensation, as stated in their declarations. The plaintiffs assert that they worked, generally, Monday through Friday, from approximately 8:00 a.m. to 4:30 p.m., with an unpaid thirty-minute break. Sometimes, the plaintiffs worked longer than an eight-hour day or worked a full eight-hour day on a Saturday or Sunday. During the relevant period of time, the plaintiffs' rate of pay was between $100 and $120 per day.

In 2011, six plaintiffs worked concurrently at the Church site and the Long Island site, Monday through Friday, from approximately 7:00 a.m. to 5:00 p.m., with an unpaid thirty-minute lunch break. According to the plaintiffs, the defendants did not compensate them for one to twelve days worked and did not pay any overtime for weeks when their hours of work exceeded forty. The plaintiffs assert that the defendants failed to comply with notice requirements. In or around the Spring 2012, the defendants fired Sanchez from work because of his complaints regarding wages owed.

The plaintiffs assert that, "[b]ased on their regular workweek schedule, their effective hourly rate was between $9.47 and $15.00." The plaintiffs maintain that they worked but did not receive wages "for anywhere from 11 to 23 days of work at the School site, one to 25 days of work at the Church site, and one to two days of work at the Long Island site." The plaintiffs

contend that, based on the number of days they were not paid for their work, the length of an average workday at each site and the applicable minimum wage, they are entitled to $8,999.06 in minimum wage damages, under the FLSA and NYLL.

The plaintiffs contend that they are also entitled "to the difference between the minimum wage and their promised amount of wages for all hours worked under NYLL." According to the plaintiffs, "their effective hourly rate was between $10.53 and $15.00 for the days in which Plaintiffs worked and received no payment," and "they are entitled to the difference between their regular rate of pay and the minimum wage, which is a total of $7,211.04." Furthermore, the plaintiffs worked more than forty hours per week without overtime compensation at the School site, "with an effective hourly rate of $15.00 as their regular rate of pay," but "should have been paid an additional $7.50 in overtime wages under the FLSA and NYLL for hours worked over forty per week." At the Church site, they worked "an average of 47.5 hours per week," and based on their daily pay rate of between $100 and $200 at the Church site, their regular hourly rate was between $10.53 and $21.05. Thus, they should have received between an additional $5.27 and $10.53 per hour.

The plaintiffs assert they are entitled to recover damages under the New York Wage Theft Protection Act for the defendants' failure to provide them with weekly wage statements and notices of pay rate, after that law became effective, on April 9, 2011. As a result, they are entitled to $100 for each workweek after that date, totaling $5,500. The plaintiffs seek liquidated damages under the FLSA and NYLL, because the defendants, by the virtue of their default, failed to establish an affirmative defense. Moreover, they seek $2,095.70 in pre-judgment interest "on damages related to Defendants' failure to pay the promised wages and . . . spread-of-hours payments." Sanchez asserts that he is entitled "to damages resulting from

Defendants' retaliation, including liquidated damages of up to $10,000, and reasonable attorney's fees."

In support of the plaintiffs' request for damages, Tai submitted exhibits, including Exhibit C, "a detailed chart of the Plaintiffs' wage-and-hour damages," and Exhibit D, "a summary of the damages owed to Plaintiffs and accounts for an offset of payments that Plaintiffs have received from two separate settlements." Tai explained what each column in Exhibits C and D represents.

Concerning Exhibit C, Tai contends that, "[b]ecause Plaintiffs' regular rate of pay exceeded the minimum wage, there are only minimum wage damages for the period that Plaintiffs did not receive any wages for hours worked. Thus, [column L on Exhibit C] is calculated by multiplying unpaid hours during the applicable pay period (column H) by the minimum wage rate (column K). This column does not double count Plaintiff's [sic] FLSA and NYLL minimum wage damages." According to Tai, column M in Exhibit C "is the additional amount of damages that each Plaintiff is owed under NYLL § 191 based on the agreed upon rate, which was higher than the minimum wage. Because the minimum wage is already accounted for in column L, column M represents the difference between the agreed upon hourly rate (column J) and the minimum wage rate (column K) multiplied by the number of unpaid hours during the applicable pay period (column H)." Tai contends that Column N in Exhibit C "is the unpaid overtime damages . . . using the agreed upon hourly rate as required regular rate of pay." Tai asserts that, "[b]ecause the minimum and unpaid wage damages (columns L and M) already account for the violations for the hours over forty based on the regular hourly rate, only the half time-differential is counted towards the overtime damages calculation. Thus, the calculation is made by deducting forty from the average number of hours worked per week (column G), and

5

then multiplying that number by half of the hourly rate (column J), and then by the number of weeks in the applicable pay period (column E)." Tai contends that column P of Exhibit C represents liquidated damages owed under NYLL, and column Q of Exhibit C represents "the amount of damages owed under the Wage Theft Prevention Act, which became effective April 9, 2011. For every week that Defendants failed to provide paystubs, there is a violation of $100, with a cap of $2,500.00 for maximum damages per plaintiff." Tai asserts that column S of Exhibit C represents the total amount of the minimum wages, additional unpaid wages and overtime compensation. For Angel Quille and Wilson Quito, an amount is entered indicating how much of the total damages pertain to their pre-October 2010 claims, which do not apply to the defaulting defendants. Similarly, column T of Exhibit C, representing the total amount of liquidated damages under FLSA and NYLL, indicates how much pertains to pre-October 2010 claims of Angel Quille and Wilson Quito. Tai asserts that column U of Exhibit C represents the total amount of damages owed to the plaintiffs, before Sanchez's retaliation claim.

Concerning Exhibit D, Tai explained that column B indicates the total of wage damages and column C the total of non-wage damages, including liquidated damages under FLSA and NYLL, pay stub violations and statutory interest. Column D represents liquidated damages for Sanchez's retaliation claim, and column E represents the total damages. Tai explains that, in calculating damages, the amount of damages the plaintiffs received from the settling defendants was taken into an account, as indicated in Exhibit D. Thus, Tai asserts, the total damages owed to the plaintiffs are $48,846.12, distributed as follows: (1) $13,663.84, to Luis Alvarez; (2) $2,781.17, to Angel Rodolfo Camas; (3) $5,979.47, to Diego Camas; (4) $3.051.63, to Luis Corasaica; (5) $6,618.58, to Angel Quille; (6) $2,072.17, to Wilson Quito; and (7) $14,679.26, to Sanchez.

The plaintiffs seek $60,837.25 in attorneys' fees for: (1) Tai, a senior staff attorney at the Urban Justice Center ("UJC"); (2) Sonia Lin ("Lin") and Fritzsche, supervising attorneys and Clinical Teaching Fellows at the Cardozo Immigration Justice Clinic ("CIJC"); and (3) law students enrolled at CIJC in the 2012-2013 and 2013-2014 academic years, namely Ryan Brewer, Michael Novasky, Stephanie Cordero, Elysa Baron, Sara Rohani and Margaret Teich. The plaintiffs maintain that this action "was reasonably staffed," and the law school students "performed the majority of the legal work under Lin's supervision." According to the plaintiffs, the hours spent on this litigation are: "42 hours for Lin, 16.2 hours for Fritzsche, and 362 hours for the law student representatives." The plaintiffs assert that the hourly rates sought are reasonable, namely, "$275 for Lin and for Tai, both of whom graduated law school in 2008, $250 for Fritzsche, who graduated law school in 2009, and $125 for the student attorneys."

Fritzsche states in his declaration that he is a 2009 graduate of the New York University School of Law and has been a Clinical Teaching Fellow at the CIJC from 2014 to the present. Attached to Fritzsche's declarations are his and Lin's resumes. Prior to being a Clinical Teaching Fellow, Fritzsche was a Skadden Fellow staff attorney at the Southern Poverty Law Center, Immigrant Justice Project in Atlanta, Georgia, from 2009 to 2014, where he represented immigrant workers in pursuing their civil and employment rights claims.

Lin's resume shows that she is a 2008 graduate of the New York University School of Law. She has been a Clinical Teaching Fellow at the CIJC, from August 2011 to the present. Prior to being a Clinical Teaching Fellow, Lin was an associate and Public Interest Fellow at the law firm Outten & Golden LLP, from September 2009 to July 2011, and she worked as a law clerk for Denny Chin, United States District Judge, United States District Court for the Southern District of New York, from 2008 to 2009.

7

According to Fritzsche, the work performed by the law student representatives "included pre-complaint investigation, legal research into Plaintiffs' claims, client communication and counseling, drafting the Complaint and the Amended Complaint, service of process, calculating damages, obtaining an entry of default against [the defendants] and preparing the inquest submission." The plaintiffs "excluded approximately 140 hours for their weekly supervision meeting times" and, where two law students worked on the same matter, the plaintiffs request fees for only one law student. The plaintiffs seek $591.76 in costs, which includes: (a) $350, for the filing fee; (b) $189, for the service of process on WI; (c) $32.76, for court transcripts; and (d) $20, for records from the New York Department of State regarding WI. Fritzsche attached to his declaration "a chart that summarizes the time spent on this case by" CIJC personnel, drawn from contemporaneous records maintained by CIJC for this action.

Tai contends that she has been a staff attorney at UJC from November 2009 to October 2013, and a senior staff attorney from November 2013 to present. Tai received her law degree from American University Washington College of Law, in 2008. From 2008 to 2009, Tai was a staff attorney at the United States Court of Appeals for the Second Circuit. Tai contends that she has expertise in representing low-wage workers in federal, state and administrative litigation related to employment and labor law, discrimination and labor trafficking. Tai's hourly rate is $275, and she spent 73.2 hours of work on this action, totaling $20,130. Tai attached relevant time records to her supplemental declaration.

### Legal Standard

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with

reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). Establishing the appropriate amount of damages involves two steps: (1) "determining the proper rule for calculating damages on . . . a claim"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." Id. Rule 55(b)(2) of the Federal Rules of Civil Procedure "leaves the decision of whether a hearing is necessary[, for determining damages,] to the discretion of the district court" and as long as it is ensured "that there [is] a basis for the damages specified in a default judgment," the court is not required to hold a hearing. Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

"Every employer shall pay to each of his employees who in any workweek is engaged in commerce . . . wages . . . not less than . . . $7.25 an hour." 29 U.S.C. § 206(a)(1). "[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "Any employer who violates the provisions of section 206 or section 207 of the [FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However,

> if the employer shows to the satisfaction of the court that the act or omission giving rise to [an action under FLSA] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.

"Liquidated damages under the FLSA are considered compensatory rather than punitive in nature." Reich v. S. New England Telecomms. Corp., 121 F.3d 58, 71 (2d Cir. 1997). An FLSA

action "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

"'"The basic minimum hourly wage rate shall be . . . $7.25 per hour on and after July 24, 2009" until December 30, 2013. New York Compilation of Codes, Rules and Regulations ("NYCCRR") § 142-2.1. "An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate." NYCCRR § 142-2.2. "An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which . . . the spread of hours exceeds 10 hours." NYCCRR § 142-2.4. Effective April 9, 2011, NYLL provides:

> If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due.

NYLL § 663(1).

Before April 9, 2011, NYLL provided for recovery of liquidated damages equal to twenty-five percent of the total of underpayments found to be due. See NYLL § 663(1). "[L]iquidated damages under the Labor Law 'constitute a penalty' to deter an employer's willful withholding of wages due.'" Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999) (citation omitted). Effective April 9, 2011, NYLL provides that "[i]f any employee is not provided a statement or statements as required by subdivision three of section one hundred ninety-five of this article, he or she shall recover in a civil action damages of one hundred dollars for each

work week that the violations occurred or continue to occur, but not to exceed a total of twenty-five hundred dollars." NYLL § 198(1-d). NYLL provides that an employee who prevails on his retaliation claim is entitled to liquidated damages which "shall be calculated as an amount not more than ten thousand dollars." NYLL § 215(2)(a).

When exercising their discretion to determine the reasonableness of an attorney's fees, courts in this Circuit use the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). In calculating the presumptively reasonable fee, a district court must consider, among others, the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), see Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190, which are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

> Id. at 186-87 n.3.

A fee application that is not supported by evidence of "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done" should normally be denied. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

***Application of Legal Standard***

Damages

The plaintiffs worked for the defendants from October 2010 through August 2011. Since

WI and Park defaulted, the plaintiffs are entitled to a finding that the defendants acted willfully.

Accordingly, the statute of limitations under FLSA is three years, and the defendants failed to

establish an affirmative defense to imposition of liquidated damages.  The plaintiffs' affidavits

establish that the plaintiffs rate of pay was between $95 and $120 per day.  The plaintiffs did not

receive any compensation for 11 to 23 days of work at the School site, one to 25 days of work at

the Church site and one to two days of work at the Long Island site.  The plaintiffs are entitled to

compensation for their unpaid wages, under the NYLL, at the rate promised by the defendants,

as well as for unpaid overtime compensation, under the FLSA and NYLL.  The plaintiffs are

entitled to recover damages for the defendants' failure to provide weekly wage statements,

namely $100 for each week worked up to a total of $2,500 for each plaintiff.  The Court finds

that liquidated damages under both FLSA and NYLL are appropriate at the rates in effect at the

relevant times.  Moreover, Sanchez seeks liquidated damages not exceeding $10,000 on his

retaliation claim, as permitted by the NYLL.  Based on the plaintiffs' declarations and the review

of the plaintiffs' inquest submissions, the Court finds that the plaintiffs established, by proper

calculation, that they are entitled to $48,846.12 in damages to be paid by WI and Park, including

liquidated damages and pre-judgment interest, as presented in their Exhibits C and D, included

in this report as an Appendix.

Attorneys' Fees and Costs

      This is a straightforward case involving eight plaintiffs, originally, and a relatively short

period of time, from October 2010 to August 2011, during which the plaintiffs claimed unpaid

wages and overtime compensation for work they performed on three construction sites.  The

issues in this case are neither novel nor difficult.  WI and Park defaulted and no discovery

activities were undertaken.  The only substantive work of any significance in connection with the

defaulting defendants, after the amended complaint was filed in this case, was preparing the instant inquest submissions, including the damages calculation. The nature of the claims and the procedural posture of the case did not require any particular experience or expertise on the part of the plaintiffs' attorneys.

In the circumstance of this case and based on the attorneys' respective experiences, reputations and abilities, the Court finds that the following hourly rates are reasonable: (a) $275, charged by Tai; (b) $275, charged by Lin; and (c) $250, charged by Fritzsche. Other than stating: (a) the names of six law student representatives who claim hours in this case; and (b) that "[s]econd and third-year law students enroll in the year-long Clinic and earn 13 credits over two semester," working in teams under close supervision of a practicing attorney who is a full-time member of the CIJC, Fritzsche did not identify who was a second-year and who was a third-year law student, or whether Fritzsche supervised any of them and for how long. Neither Lin nor the law student representatives submitted declarations. Fritzsche did not include the law student representatives' resumes in his declaration nor did he describe their respective experiences and abilities. Thus, absent any information about the backgrounds of the law student representatives, it is impossible for the Court to ascertain what hourly rate of pay, if any, is reasonable for the work they performed.

Concerning the hours expended in this action in connection with the defaulting defendants, the Court finds that the hours requested are not reasonable because the plaintiffs' attorneys and the law student representatives performed a significant amount of duplicative work, unjustifiably. For example, the time records indicate that Tai, a senior staff attorney, drafted the inquest memorandum of law on January 22, 2014, and edited and revised it,

13

expending 11.2 hours on those tasks.  However, Fritzsche, Lin and the law student representatives also expended numerous hours on drafting, revising and editing the inquest memorandum of law.  Fritzsche expended 5.8 hours editing the inquest memorandum of law, Lin expended 8.9 hours on "Work on inquest submission," and various law student representatives expended 60.5 hours drafting the inquest memorandum of law, starting on October 1, 2013, as well as revising it.  Expending approximately 86.4 hours on the instant inquest memorandum of law, not including the calculation of damages, is unjustified and unreasonable.  The Court finds that 362 hours expended by the law student representatives are not reasonable due to the excessive and duplicative nature of the work performed, and a reduction of the law student representatives' hours is warranted.  However, based on the paucity of information about the law student representatives' respective experiences and abilities, it is not possible for the Court to ascertain what would be the appropriate reduction of their hours.  The Court finds that the reasonable hours expended are as follows: (a) 73.20 by Tai; (b) 42 by Lin; and © 16.2 by Fritzsche.  The Court finds that $591.76 are reasonable costs.  Accordingly, the plaintiffs are entitled to reasonable attorneys' fees in the amount of $35,730, and $591.76 in costs.

Post-judgment Interest

The plaintiffs are entitled to post-judgment interest at the rate authorized by 28 U.S.C. § 961(a).

**RECOMMENDATION**

For the foregoing reasons, I recommend that the plaintiffs be awarded: (1) $48,846.12 in damages, distributed as follows: $13,663.84 to Luis Alvarez, $2,781.17 to Angel Rodolfo Camas, $5,979.47 to Diego Camas, $3.051.63 to Luis Corasaica, $6,618.58 to Angel Quille,

$2,072.17 to Wilson Quito, and $14,679.26 to Sanchez; (2) $35,730 in attorneys' fees; (3)

$591.76 in costs; and (4) post-judgment interest.


## APPENDIX


## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be

filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

Vernon S. Broderick, 40 Centre Street, Room 415, New York, New York, 10007, and to the

chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007.  Any

requests for an extension of time for filing objections must be directed to Judge Broderick.

*Failure to file objections within fourteen (14) days will result in a waiver of objections and

will preclude appellate review.*  See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985);

Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York                          Respectfully submitted,
       July 1, 2015

                                                   _Kevin Nathaniel Fox_
                                                   KEVIN NATHANIEL FOX
                                                   UNITED STATES MAGISTRATE JUDGE